UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOEMY JACKSON, ROBERTO PEREZ, and RAYMUNDO GALLARDO, on behalf of themselves and all other similarly-situated individuals,<br><br>*Plaintiffs*,<br><br>v.<br><br>ProAmpac LLC a/k/a ProAmpac, and Ampac Holdco Inc. a/k/a ProAmpac,<br><br>*Defendants*. | **COMPLAINT**<br><br>Civ. Action No.: 22-cv-3120<br><br>COLLECTIVE AND CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiffs, by their undersigned attorneys the Law Office of Robert D. McCreanor, P.L.L.C. and Kakalec Law PLLC, as and for their Collective and Class Action Complaint, allege as follows:

**Preliminary Statement**

1. Plaintiffs Noemy Jackson, Roberto Perez, and Raymundo Gallardo worked for Defendants ProAmpac LLC a/k/a ProAmpac, and Ampac Holdco Inc. a/k/a ProAmpac (jointly, "ProAmpac"), which manufactures flexible packing supplies in Walden, New York. Plaintiffs and other similarly-situated workers at the ProAmpac Walden facility were required to arrive at work 5-15 minutes before their shifts began each day and to begin work by donning protective gear, reviewing the assignment board, and being on standby to take over operation of machinery from their co-workers. However, Plaintiffs and the other workers were not paid for this pre-shift work, or for post-shift work. Then, beginning around January 2020, ProAmpac began

"rounding down" the work time of Plaintiffs and others similarly-situated by as much as 15 minutes – always in favor of the company – if workers were late to work.

2. Defendants' actions caused significant harm to the workers at the ProAmpac facility: A worker who was not paid for even 10 minutes a day was deprived of approximately 52 hours of overtime pay per year – well over a thousand dollars each year in unpaid wages.

3. In addition, Plaintiffs and other machine operators, assistants, "catchers," and other similarly-situated workers regularly had to purchase items such as steel-toed boots and work tools, resulting in effective illegal deductions from their pay.

4. To remedy these and other legal violations, Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") on behalf of themselves and other similarly-situated workers at the ProAmpac Walden facility. Plaintiffs seek, *inter alia*, their unpaid wages, liquidated damages, and damages for other violations of the FLSA and NYLL.

## Jurisdiction and Venue

5. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 201 *et seq.* (FLSA).

6. The Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claim.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

8. Defendants reside and/or do business in this district.

## Parties

9. Plaintiff Noemy Jackson is an adult who currently resides in New York State.

10. Ms. Jackson was employed by ProAmpac at the Walden facility, full-time, for more than twenty-five years, until she was fired in March 2022. During much of this time, she worked for the company seven days a week.

11. Ms. Jackson's primary and native language is Spanish.

12. Ms. Jackson consents in writing to becoming a party in this action. A true and correct copy of Ms. Jackson's FLSA consent form is attached hereto as Exhibit 1.

13. Plaintiff Roberto Perez is an adult who currently resides in New York State.

14. Mr. Perez began working for ProAmpac at the Walden facility approximately twenty-four years ago, and is still employed, full-time, by ProAmpac.

15. Mr. Perez's primary and native language is Spanish.

16. Mr. Perez consents in writing to becoming a party in this action. A true and correct copy of Mr. Perez's FLSA consent form is attached hereto as Exhibit 2.

17. Plaintiff Raymundo Gallardo is an adult who currently resides in New York State.

18. Mr. Gallardo was employed by ProAmpac at the Walden facility full-time between November 2019 and March 2022.

19. Mr. Gallardo's primary and native language is Spanish.

20. Mr. Gallardo consents in writing to becoming a party in this action. A true and correct copy of Mr. Gallardo's FLSA consent form is attached hereto as Exhibit 3.

21. Plaintiffs Noemi Jackson, Roberto Perez, and Raymundo Gallardo worked alongside other hourly-paid, non-exempt employees at the ProAmpac Walden facility.

22. Paystubs received by Plaintiffs for their work at the ProAmpac Walden facility had the name "ProAmpac," with no further modifier, printed on them.

23. W-2 forms received by workers at the ProAmpac Walden facility had the name "Ampac Holdco Inc.," with an Ohio address, listed as the employer.

24. Defendant ProAmpac LLC is an active limited liability corporation, organized under the laws of New York, with a place of business in Walden, New York.

25. Defendant Ampac Holdco Inc. is an Ohio corporation with a place of business in Walden, New York.

26. Upon information and belief, Ampac Holdco Inc. is not registered to do business in New York.

27. ProAmpac is, according to the website www.proampac.com, "a leading global flexible packaging company with a comprehensive product offering."

28. In its Walden, New York facility, ProAmpac was primarily engaged in producing paper bags and other packing materials.

29. At all times relevant to this action, ProAmpac has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

30. ProAmpac had gross sales made or business done in excess of $500,000 annually for each of the years from 2016 through the present.

31. At all times relevant to this action, ProAmpac was an "employer" of Plaintiffs and others similarly-situated as defined by the FLSA and NYLL.

32. At all times relevant to this action, Plaintiffs and others similarly-situated have been non-exempt employees of Defendants as defined by the FLSA and NYLL.

33. At all times relevant to this action, Defendants employed Plaintiffs and others similarly-situated within the meaning of the FLSA and NYLL.

**Factual Allegations**

34. On a daily basis during their employment at ProAmpac, Plaintiffs worked alongside other similarly-situated employees who were hourly-paid, non-exempt employees working as machine operators, assistants or "catchers," and other manual laborers in the converting and printing departments.

35. For much of the relevant time, the Walden ProAmpac facility was staffed 24 hours a day/7 days a week with workers performing 12 hour shifts.

36. Ms. Jackson, for example, often worked the 5:00 am to 5:00 p.m. shift, usually seven days per week.

37. Mr. Perez sometimes worked the 5:00 a.m. to 5:00 p.m. shift, but he also rotated between daytime and nighttime shifts. He typically worked 6 or 7 days per week.

38. Mr. Gallardo usually worked the 3:00 a.m. to 3:00 p.m. shift at ProAmpac, usually 6 days per week.

39. ProAmpac maintained an electronic timekeeping system for recording hours worked by Plaintiffs and others similarly situated. Plaintiffs would scan their hands and fingers into a computer to begin their work and scan again to finish work.

40. Pursuant to ProAmpac's policy, Plaintiffs and others similarly situated were required to scan in and begin work five to fifteen minutes before their official scheduled work shifts.

41. Plaintiffs and the other workers would arrive at the ProAmpac facility, scan in for work, and then put on protective gear. They would also usually check the assignment boards to see the status of that day's work, perform various other tasks, and be on standby ready to take over operation of machinery from co-workers whose shifts were ending.

42. ProAmpac supervisors indicated that workers' early arrival was necessary so that the machines at the factory could remain running continuously for 24 hours a day.

43. If Plaintiffs or others similarly situated failed to scan in for work before their shifts began, they would be disciplined.

44. Although Plaintiffs and others similarly situated began work – at the instruction of ProAmpac supervisors – prior to their scheduled shift times, and at times worked some minutes past their scheduled shift times, they were only paid for their scheduled shift times.

45. Under ProAmpac's pay policies, Plaintiffs and others similarly situated had their start time rounded up and their finish time rounded down, i.e., their time was accounted for always in favor of ProAmpac.

46. ProAmpac's rounding policy violates, among other things, 29 CFR 785.48. 23, which allows for rounding only if "this arrangement averages out so that the employees are fully compensated for all the time they actually work" and "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 CFR 785.48. 24.

47. ProAmpac's policy here, over the time worked, failed to compensate Plaintiffs and others similarly situated for all of their time worked.

48. ProAmpac's policy resulted in unpaid promised wages during every day of work for Plaintiffs and others similarly-situated.

49. Often these unpaid wages should have been paid at an overtime rate because the unpaid work occurred during weeks in which Plaintiffs and others similarly situated worked more than 40 hours.

50. Throughout their employment, ProAmpac required Plaintiffs and others similarly situated to purchase work equipment (including steel-toed boots) by separate payment.

51. For example, while ProAmpac workers were provided with a single pair of steel-toed boots per year to wear – for safety – in the facility, these boots wore out quickly. As a result, Plaintiffs and others similarly situated had to purchase one or two additional pairs of steel-toed boots each year. Steel-toed boots generally cost around $100 per pair.

52. ProAmpac machine operators also had to furnish their own equipment to use working on the machines. Plaintiff Mr. Gallardo says workers were given a list of equipment necessary for their work.

53. The purchase of steel-toed boots and other equipment could, accordingly, add up to hundreds of dollars per year in expenses that machine operators were required to spend for Defendants' benefit.

54. The purchases of boots and equipment were not in accordance with the provision of any law, rule, or regulation, and were not authorized in writing by the Plaintiffs or others similarly situated.

55. These purchases were for the benefit of Defendants and not for the benefit of the Plaintiffs and others similarly situated.

56. Plaintiffs and others similarly situated regularly worked more than ten hours in a work day.

57. However, Plaintiffs and others similarly situated were never paid an extra hour of pay for days on which their workdays spanned more than 10 hours.

58. Defendants failed to furnish proper and accurate wage statements to Plaintiffs and others similarly situated as required by NYLL § 195(3).

59. Throughout their employment, Plaintiffs and others similarly situated were furnished with wage statements which did not accurately reflect the time worked, but only showed the time of the shifts for Plaintiffs and other similarly situated.

60. In addition, the paystubs provided to Plaintiffs and others similarly situated indicate that their employer is "ProAmpac." No further description of the name is provided.

61. A search of the records of the New York Secretary of State, however, reveals that there are three companies with ProAmpac in the name, and the website of ProAmpac lists, on the "legal and privacy" page, two additional company names: ProAmpac Intermediate, Inc. and ProAmpac Holdings Inc. *See* ProAmpac, *Privacy & Legal* (accessed Apr. 11, 2022), https://www.proampac.com/en-us/privacy-legal/. But there does not appear to be a legal entity registered to do business in New York under the name "ProAmpac."

**FLSA Collective Action Allegations**

62. Plaintiffs bring their FLSA overtime wage claims, the First Cause of Action, as a collective action under 29 U.S.C. § 216(b) on behalf of themselves and those individuals who may opt into the "FLSA Collective" defined as: "all current and former employees who worked for ProAmpac at its Walden, NY plant as manual laborers at any time between April 15, 2019 through the date of final judgment in this matter."

63. The current and former employees described above are situated similarly to Plaintiffs within the meaning of FLSA, 29 U.S.C. § 216(b) and, therefore, the First Cause of

Action herein may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA.

64. Common proof applicable to Plaintiffs and the other workers will show that Defendants failed to pay wages as required by the FLSA to Plaintiffs and other workers.

65. These causes of action are also maintainable as collective actions pursuant to FLSA, 29 U.S.C. §216(b), because the prosecution of separate actions by individual members of the FLSA Collective would create a risk of inconsistent or varying adjudications with respect to individual current and former employees which would establish incompatible standards of conduct for Defendants.

66. The names, last known addresses and cell phone numbers of the proposed FLSA Collective members are available to Defendants.  Defendants therefore should be required to provide Plaintiffs with a list – including names, last known addresses, cell phone numbers, and email addresses if known – of all current and former employees who would be members of the proposed FLSA Collective.

67. Notice of and an opportunity to join this lawsuit should be provided to all potential opt-in Plaintiffs both by first class mail to their last known address and by workplace posting, as well as by other practicable means including but not limited to text messaging, as soon as possible.

**Rule 23 Class Action Allegations**

68. Plaintiffs bring their NYLL claims, the Second, Third, Fourth, Fifth, and Sixth Causes of Action, on behalf of themselves and all other similarly situated individuals (hereinafter "the NYLL Class") under Rules 23(a), (b)(1) and (b)(3) of the Federal

Rules of Civil Procedure. The NYLL Class is defined as follows: "all current and former employees who worked for ProAmpac at its Walden, NY plant as manual laborers at any time between April 15, 2016 through the date of final judgment in this matter."

69. The persons in the NYLL Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than 400 members of the NYLL Class during the six years prior to the filing of this lawsuit.

70. Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Class, but this information is readily ascertainable from Defendants' records. Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all machine operators, helpers, and other manual laborers employed by ProAmpac between April 15, 2016 and the present.

71. The claims of the named Plaintiffs are typical of the claims of the NYLL Class. Members of the proposed class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

72. Plaintiffs and the Class members have the same statutory rights under New York Labor Law and are all non-exempt employees within the meaning of New York Labor Law.

73. Named Plaintiffs and the NYLL Class members suffered similar types of damages.

74. The named Plaintiffs' claims are typical of the claims of the NYLL Class because, among other things, Plaintiffs were machine operators, helpers or "catchers," and manual laborers, and they suffered the same labor law violations as other employees.

75. Plaintiffs' interests are co-extensive with the interests of the NYLL Class members, and Plaintiffs have no interests adverse to the NYLL Class members.

76. Plaintiffs will fairly and adequately represent the interests of the NYLL Class members. Plaintiffs' interests do not conflict with the interests of the members of the Class they seek to represent.

77. Plaintiffs understand that, as class representatives, they assume a responsibility to the class to represent its interests fairly and adequately.

78. Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why these Plaintiffs and their counsel will not vigorously pursue this matter.

79. The Defendants have acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

80. There are questions of law and fact common to the NYLL Class which predominate over any questions affecting only individual members.

81. Questions of law and fact common to NYLL class as a whole include, but are not limited to the following:

   a. Whether Defendants are employers under the FLSA and/or the NYLL;

   b. Whether Defendants failed to pay class members their promised wages for all hours worked, in violation of the NYLL;

    c. Whether Defendants illegally rounded class members' hours and thus failed to pay class members as required by law;

    d. Whether Defendants unlawfully failed and continue to fail to pay required overtime compensation in violation of FLSA;

    e. Whether Defendants unlawfully failed and continue to fail to pay spread of hours and overtime compensation in violation of NYLL; and

    f. Whether Defendants failed to provide legally-required wage statement notices, in violation of NYLL.

82. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein – particularly in the context of wage and hour litigation where individual employees lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

83. The damages suffered by each individual class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct.

84. Further, it would be difficult for individual members of the NYLL Class to effectively individually obtain redress for the wrongs done to them. If individual actions were to be brought by each member of the NYLL Class, the result would be a multiplicity of actions, creating hardships for members of the NYLL Class, the Court, and the Defendants.

85. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the Court system.

86. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

87. This case does not present individualized factual or legal issues which would render a class action difficult.

88. In the alternative, the NYLL Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**FIRST CAUSE OF ACTION**
**FLSA – Overtime Compensation Violations**
**On Behalf of Plaintiffs and those individuals**
**who may opt into the FLSA Collective**

89. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

90. Plaintiffs and other similarly-situated workers regularly worked more than 40 hours in a single work week.

91. Defendants willfully failed to pay Plaintiffs and the other similarly-situated manual laborers an overtime premium of one half of their regularly hourly rate for every hour they worked above 40 in a work week.

92. Defendants' failure to pay an overtime premium for all hours worked above 40 in a work week violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

93. Defendants also violated the FLSA by failing to reimburse the Plaintiffs and others similarly situated for expenses, such as steel-toed boots, which were primarily for the benefit of Defendants, and which reduced Plaintiffs' and the other workers' wages below the required overtime rate during certain weeks of work in violation of the FLSA, 29 U.S.C. § 206(a) and its implementing regulations

94. Defendants also violated the FLSA by failing to keep records as required by statute, 29 U.S.C. § 211(c).

95. Plaintiffs and other similarly-situated workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

96. Plaintiffs and other similarly-situated workers also seek, and are entitled to, attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NYLL – Overtime Compensation Violations
### On Behalf of Plaintiffs and the NYLL Class

97. Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

98. Defendants willfully failed to pay Plaintiffs and others similarly situated overtime at a rate of at least one-and-a-half times their regularly hourly rate for every hour they worked above forty (40) hours in a single work week.

99. Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

100. Plaintiffs and the NYLL Class are entitled to their unpaid wages mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198, 663, and 681.

101. Plaintiffs also the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and interest.

**THIRD CAUSE OF ACTION**
**NYLL – Illegal Deductions**
**On Behalf of Plaintiffs and the NYLL Class**

102. Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference the foregoing allegations as if set forth fully here.

103. Throughout the period from April 15, 2016 through the present, Defendants routinely required Plaintiffs to make purchases by separate payments of equipment necessary for their jobs.

104. The payments required by Defendants did not benefit the Plaintiffs and the other Class members but were for the benefit of Defendants. The deductions were not permitted by statute and were not authorized in writing.

105. The deductions were in violation of NYLL § 193.

106. For Defendants' violation of NYLL § 193, Plaintiffs and the NYLL Class are entitled to damages in the amount of all improper deductions, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, 681.

107. Plaintiffs and the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and interest.

**FOURTH CAUSE OF ACTION**
**NYLL – Failure to Pay Promised Wages for All Hours Worked**
**On Behalf of Plaintiffs and the NYLL Class**

108. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth therein.

109. Defendants willfully failed to pay Plaintiffs and others similarly situated promised wages for all hours worked, in violation of NYLL § 193.

110. Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, 681.

111. Plaintiffs and the NYLL Class are therefore entitled to their unpaid wages as mandated by the NYLL, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with NYLL §§ 198, 663, 681.

112. Plaintiffs and the NYLL Class also seek, and are entitled to, attorneys' fees, costs, and interest.

**FIFTH CAUSE OF ACTION**
**NYLL – Spread of Hours**
**On Behalf of Plaintiffs and the NYLL Class**

113. Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

114. Defendants willfully violated Plaintiffs' rights by failing to pay Plaintiffs an extra hour of pay for days on which their workday spanned more than 10 hours or on which they

worked split shifts within 7 calendar days after the end of the week in which the wages were earned in violation of the NYLL and its regulations.

115. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid spread of hours compensation, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with NYLL §§ 198, 663, 681.

116. Plaintiffs and others similarly situated also seek, and are entitled to, attorneys' fees, costs, and interest.

### SIXTH CAUSE OF ACTION
### NYLL – Wage Statement Violations
### On Behalf of Plaintiffs and the NYLL Class

117. Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

118. Defendants failed to provide Plaintiffs and others similarly situated with accurate wage statements with every payment of wages which provided all of the information required under NYLL § 195(3).

119. For Defendants' violation of NYLL § 195(3), Plaintiffs and others similarly situated are entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-d).

120. Plaintiffs also seek, and are entitled to, attorneys' fees, costs, and interest.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

    a. assuming jurisdiction over this action;

    b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216 and allowing employees to opt into the action;

    c. certifying this case as a class action in accordance with Fed. R. Civ. P. 23 with respect to Counts II through VI;

    d. declaring Defendants violated the FLSA and the NYLL;

    e. permanently enjoining Defendants from further violations of the FLSA and NYLL;

    f. granting judgment to Plaintiffs and others similarly situated who may opt into this action on their FLSA claims and awarding unpaid wages and an equal amount in liquidated damages;

    g. granting judgment to Plaintiffs and others similarly situated on their NYLL claims and awarding unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

    h. awarding Plaintiffs and others similarly situated prejudgment and postjudgment interest as allowed by law;

    i. awarding Plaintiffs and others similarly situated their costs and reasonable attorneys' fees; and

    j. granting such further relief as the Court deems just and proper

DATED:    Hawthorne, NY
April 15, 2022

                                      /s/ Robert McCreanor
                                      Robert McCreanor
                                      Law Office of Robert D. McCreanor, P.L.L.C.
                                      245 Saw Mill River Road
                                      Suite 106
                                      Hawthorne, NY 10532

(845) 202-1833
rmccreanor@rdmclegal.com

Patricia Kakalec
Hugh Baran
Kakalec Law PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Patricia@KakalecLaw.com
Hugh@KakalecLaw.com

*Attorneys for Plaintiffs*