USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/25/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEMY JACKSON, ROBERTO PEREZ,
and RAYMUNDO GALLARDO, on behalf
of themselves and all other similarly-situated
individuals,

                            Plaintiffs,                    7:22-CV-03120 (NSR)

        -against-                                          OPINION & ORDER

PROAMPAC LLC a/k/a PROAMPAC; AMPAC
HOLDCO INC. a/k/a PROAMPAC; and AMPAC
PAPER, LLC,

                            Defendants.

NELSON S. ROMÁN, United States District Judge:

        Plaintiffs Noemy Jackson, Roberto Perez, and Raymundo Gallardo (collectively,

"Plaintiffs") bring this action, on behalf of themselves and others similarly situated, against

Defendants ProAmpac LLC, Ampac Holdco. Inc., and Ampac Paper, LLC (collectively,

"ProAmpac"), asserting claims under the Fair Labor Standards Act ("FLSA") and the New York

Labor Law ("NYLL").[1]  (*See* Second Amended Complaint ("SAC"), ECF No. 51-1.)

        Pending before the Court are (1) Defendants' motion to dismiss Plaintiffs' NYLL § 193

and 195 claims and (2) Plaintiffs' motion to conditionally certify an FLSA collective action.  For

the following reasons, the Court GRANTS Defendants' motion and GRANTS in part and DENIES

in part Plaintiffs' motion.

---

[1] Josefa Romero and Reynaldo Cruz Perez have since opted into the lawsuit as named Plaintiffs.  (*See* ECF
No. 15 (Romero) and ECF No. 26 (Cruz Perez).)

## BACKGROUND

ProAmpac "manufactures flexible packing supplies" at a facility located in Walden, New York.  (SAC at ¶ 1.)  Plaintiffs worked alongside one another and others similarly-situated as hourly-paid, non-exempt employees at the Walden facility.  (*Id.*)  Plaintiffs and similarly-situated employees worked together as machine operators, assistants, or "catchers," as well as other manual labor positions in the converting and printing departments.  (*Id.* at ¶ 36.)

Plaintiffs were employees in the converting department, which "assembles raw materials into paper bags, prints onto the bags, and packages the bags."  (Affirmation of Noemy Jackson ("Jackson Aff.") at ¶ 5, ECF No. 34-1; Affirmation of Roberto Perez ("Perez Aff.") at ¶ 5, ECF No. 34-2; Affirmation of Reynaldo Cruz ("Cruz Aff.") at ¶ 4, ECF No. 34-3.)  "Operators" run the machine "which assembles and prints the paper bags" (Perez Aff. at ¶ 5), "catchers" collect finished bags from the machine and examine them for quality assurance (Jackson Aff. at ¶ 5), and "assistants" or "helpers" provide support to "operators" and "catchers" in maintaining the machines and collecting bags (Cruz Aff. at ¶ 4).  Ms. Jackson was a "catcher" and worked as a full-time employee for more than twenty-five years until March 2022, when she was fired.  (SAC at ¶ 10; Jackson Aff. at ¶¶ 3, 5.)  Mr. Perez is an "operator" and full-time employee who has also worked for ProAmpac for nearly twenty-five years.  (SAC at ¶ 14; Perez Aff. at ¶¶ 3, 5.)  Mr. Gallardo worked as a full-time employee for ProAmpac between November 2019 and March 2022.  (SAC at ¶ 18.)  Alongside the approximately 100 employees who worked in the converting department, approximately 24 employees worked in the printing department.  (Jackson Aff. at ¶ 6; Perez Aff. at ¶ 6.)  Plaintiffs attest those employees in the converting department—including themselves—"regularly" worked alongside the employees in the printing department.  (Jackson Aff. at ¶¶ 6–7; Perez Aff. at ¶¶ 6–7; Cruz Aff. at ¶ 5.)

2

During the relevant time, ProAmpac staffed its Walden facility 24 hours a day and 7 days a week. (SAC at ¶ 37.) To do so, ProAmpac scheduled two shifts, each of which lasted 12 hours. (*Id.*) To track employee time, ProAmpac maintained an electronic timekeeping system by which employees would "scan their hands and fingers" to start work and then again to finish work. (*Id.* at ¶ 41.) Employees were required to "scan in" five-to-fifteen minutes before their scheduled work shifts. (*Id.* at ¶ 42.) They would do so to allow time to "put on protective gear," "check the assignment boards," and "be on standby ready to take over operation of machinery from co-workers whose shifts were ending." (*Id.* at ¶ 43.) Plaintiffs and similarly-situated employees, however, were not compensated for this additional time because ProAmpac maintained a "rounding policy" which "rounded up" start time and "rounded down" end time in ProAmpac's favor. (*Id.* at ¶¶ 46–47.) As such, ProAmpac failed to compensate employees for "all of their time worked," including overtime pay when the rounding policy resulted in unpaid work for weeks in which employees worked more than 40 hours. (*Id.* at ¶¶ 49–51.)

Moreover, ProAmpac requires employees to purchase work equipment, including steel-toed boots. (*Id.* at ¶ 52.) Although each year ProAmpac provided each employee with a single pair of steel-toed boots to wear as required personal protective equipment, "these boots wore out quickly and did not last a full year." (*Id.* at ¶ 53.) Employees were thus forced to purchase additional pairs of boots each year to meet ProAmpac's safety requirement. (*Id.* at ¶ 54.) In addition, "operators" were required to purchase their own tools—*e.g.,* wrenches, screwdrivers—to use when working on the machines. (*Id.* at ¶ 56.) Plaintiffs allege that these additional purchases "decreased their wages below the legally-required hourly wage." (*Id.* at ¶ 60.)

Lastly, Plaintiffs allege ProAmpac failed to furnish accurate wage statements. (*Id.* at ¶¶ 63–64.) Because of ProAmpac's rounding policy, these statements "obscured the actual hours

worked" by Plaintiffs and others similarly-situated. (*Id.* at ¶ 65.) As a result, these statements resulted in "wage theft," "deprived" employees "of the opportunity to spend their wages on necessary expenses," and prevented employees from exercising their legal rights. (*Id.* at ¶¶ 66–68.) The wage statements also failed to include the legal name of the Plaintiffs' employer; instead, the statements generically indicate the employer was "ProAmpac," which is not the name of a legal entity registered to do business in New York. (*Id.* at ¶¶ 71–72.) Because the wage statements did not include the "proper legal name" of Plaintiffs' employer, Plaintiffs and others similarly-situated were delayed in exercising their legal rights. (*Id.* at ¶ 73.) Plaintiffs' counsel also allegedly "had to conduct additional research to identify what entity or entities to name as Defendants in this action." (*Id.*)

In a Complaint filed on April 15, 2022 and subsequently amended (*see* ECF Nos. 1, 18, 51-1), Plaintiffs assert FLSA and NYLL claims on behalf of themselves and others similarly-situated. Plaintiffs allege under federal and state law that ProAmpac failed to pay them an overtime premium for all hours worked above 40 hours in a work week. (SAC at ¶¶ 102–114.) Plaintiffs also allege under state law that ProAmpac (1) failed to pay Plaintiffs for all hours worked (*id.* at ¶¶ 122–26); (2) illegally deducted Plaintiffs' wages by requiring Plaintiffs to make separate purchases of safety equipment and tools (*id.* at ¶¶ 115–121); and (3) furnished inaccurate wage statements (*id.* at ¶¶ 127–133). Defendants seek to dismiss the latter two state law claims, which constitute Counts Three and Five of the Second Amended Complaint. (ECF No. 28.)

Meanwhile, Plaintiffs seek conditional certification of this action as an FLSA collective action for the following class of potential opt-in plaintiffs (ECF No. 32):

> All current and former employees who worked for ProAmpac at its Walden, NY plant in the converting or printing departments in non-supervisory positions at any time between April 15, 2019 through the date of final judgment in this matter.

4

(Plaintiffs' Memorandum of Law in Support of Motion to Conditionally Certify ("Plfs. Mem.") at 1, ECF No. 33.)

## MOTION TO DISMISS

### I.     Count Three: NYLL § 193

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count Three of the Complaint.

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In Count Three, Plaintiffs assert that ProAmpac decreased Plaintiffs' wages "below the legally-required hourly wage" by forcing Plaintiffs to purchase required safety equipment and tools.  (SAC at ¶¶ 116–118.)  This decrease, allege Plaintiffs, constitutes a deduction in violation

of NYLL § 193.  (*Id.* at ¶ 119.)  ProAmpac, however, argues Plaintiffs fail to state a claim because Plaintiffs do not allege that (1) any actual deductions occurred or (2) Plaintiffs ever earned below the minimum wage in a particular workweek.  (*See generally* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs. Mem.") at 6–10, ECF No. 29.)

Regardless of whether Plaintiffs' required purchases constituted "deductions" within the meaning of NYLL § 193, "under New York law, employers do not have to reimburse employees for business expenses . . . so long as not doing so does not reduce the employee's wage below the minimum wage." *E.g., Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (citation omitted); *see Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 534 (E.D.N.Y. 2017) ("[E]ven if failure to reimburse does constitute an unlawful deduction, [plaintiff] fails to properly allege an unlawful deduction here" because plaintiff did not show "that such expenses would reduce his effective wage to below the minimum wage required in New York.").  Here, although Plaintiffs allege *why* they needed to incur out-of-pocket expenses—*e.g.,* ProAmpac required Plaintiffs to wear steel-toed boots yet only provided one pair per year—Plaintiffs fail to provide details regarding how much money Plaintiffs spent on these items, how often Plaintiffs incurred these expenses, and how these expenses "remove [Plaintiffs' wages] outside of the minimum wage requirements." *Oram*, 979 F. Supp. 2d at 507.  Instead, Plaintiffs speculate that these expenses "could" "add up to hundreds of dollars per year," and Plaintiffs conclude that these expenses decreased Plaintiffs' wages below minimum wage.  (SAC at ¶¶ 57, 60.)  Plaintiffs' allegations lack sufficient specificity, and as such, Plaintiffs fail to state a claim.

Accordingly, the Court dismisses without prejudice Plaintiffs' NYLL § 193 claim.  The Court now turns to Plaintiffs' NYLL § 195 claim.

## II.     Count Five: NYLL § 195

Defendants also move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Count Five of the Complaint.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004) (internal citations omitted). "On a motion to dismiss for lack of subject matter jurisdiction, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings" such as affidavits or other evidence. *Id.* at 588 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). "[C]ourts must accept as true all material factual allegations in the complaint" and "refrain from drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Fox v. Commonw. Worldwide Chauffeured Transp. of NY, LLC*, No. 08–CV–1686 (NGG)(RML), 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009) (internal quotation marks and citations omitted).

In Count Five, Plaintiffs allege ProAmpac neglected to provide wage statements containing "all of the information" required under NYLL § 195.  (SAC at ¶ 128.)  In particular, Plaintiffs allege the wage statements obscured Plaintiffs' actual hours worked and legal employer.  (*Id.* at ¶ 131.)  As such, "wage theft" "was allowed to persist," Plaintiffs "were denied the opportunity to spend or invest their legally-owed wages," and Plaintiffs were "delayed in acting on their legal right to recover stolen wages."  (*Id.* at ¶¶ 129–131.)  ProAmpac argues Plaintiffs' § 195 claim

ought to be dismissed because Plaintiffs fail to allege an actual, concrete, and particularized injury-in-fact.  (*See generally* Defs. Mem. at 10–12.)

Article III of the United States Constitution limits the Court's judicial powers to resolving "cases or controversies."  U.S. Const. art. III.  "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  The Court must ascertain whether the Complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).

This Court previously held in *Imbarrato v. Banta Management Services, Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744 (S.D.N.Y. Mar. 20, 2020) that plaintiffs had Article III standing to assert NYLL § 195 claims because the "[d]eprivation of [accurate] notices necessarily entails a *significant risk of harm* to the employees' concrete interest in being properly paid."  *Imbarrato*, 2020 WL 1330744, at *9 (emphasis added).  The Court based its decision on the prevailing legal framework at the time—the "material risk" standard—as articulated by the Second Circuit in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016).  *See Imbarrato*, 2020 WL 1330744, at *7. In *Strubel*, the Second Circuit observed that "an alleged procedural violation" of a statute could "by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation present[ed] a 'risk of real harm' to that concrete interest."  *Strubel*, 842 F.3d at 190 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).  The Supreme Court, however, has since "rejected the standard . . . articulated in *Strubel*."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (citing *TransUnion LLC*

*v. Ramirez*, 141 S. Ct. 2190, 2204–07, 2210–11 (2021)).   Instead, the Supreme Court in *TransUnion* explained that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm."   141 S. Ct. at 2210–11.   To that end, the *TransUnion* Court further clarified that although an "informational injury" may give rise to standing, a plaintiff must identify "downstream consequences from failing to receive the required information."   141 S. Ct. at 2214 (internal quotations omitted).   Those "downstream consequences," the Second Circuit has held, must show a plaintiff's interest in using the information "beyond bringing [this] lawsuit."   *Harty*, 28 F.4th at 444 (first quoting *TransUnion*, 141 S. Ct. at 2214, then *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

Plaintiffs fail to sufficiently allege an injury in fact.   Although Plaintiffs specifically allege the inaccurate notices delayed Plaintiffs' ability to enforce their legal rights (and therein prevent or prosecute the alleged wage theft), these harms do not show an interest in using the information "beyond bringing [this] lawsuit."   *Harty*, 28 F.4th at 444.   Meanwhile, Plaintiffs' monetary harm is better traced as an injury flowing from ProAmpac's rounding policy, not ProAmpac's inaccurate wage notices.   *See Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) ("The injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law.").   Although ProAmpac's inaccurate wage notices may have obscured ProAmpac's rounding policy, it is not apparent—short of legal action—how an accurate notice would have dissuaded ProAmpac from executing its rounding policy and thus prevented the monetary harm.   *See id.* ("[W]hat [plaintiff] is really saying is that if defendants had given him the required documents, those documents would

have informed him that he was not being paid his required wages.  Enlightened by that knowledge, plaintiff then would have demanded his required wages. Having made such a demand, defendants would have then paid him his required wages, and plaintiff would have avoided the injury he suffered by the failure to properly pay him.").  It appears, instead, the allegations do not establish Plaintiffs' interest in using the information "beyond bringing [this] lawsuit."  *Harty*, 28 F.4th at 444; *see TransUnion*, 141 S. Ct. at 2214 ("Moreover, the plaintiffs have identified no 'downstream consequences' from failing to receive the required information. They did not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties.").  Because Plaintiffs' interest in obtaining accurate wage statements is tied solely to bringing the present action, Plaintiffs cannot establish standing for their wage statement claim.

Accordingly, the Court dismisses without prejudice Plaintiffs' NYLL § 195 claim.  The Court now turns to Plaintiffs' motion to conditionally certify an FLSA collective action.

## MOTION FOR CONDITIONAL CERTIFICATION

Plaintiffs move for conditional class certification of a FLSA collective action on behalf of "[a]ll current and former employees who worked for ProAmpac at its Walden, NY plant in the converting or printing departments in non-supervisory positions at any time between April 15, 2019 through the date of final judgment in this matter."  (Plfs. Mem. at 1.)

### I.    Conditional Certification

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  To become parties to such an action, employees other than the named plaintiffs must "opt in" by filing written consents with the court in which the action is brought.  *Id.*

"Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA. *See Myers*, 624 F.3d at 554. In the first step— commonly known as "conditional certification"—the named plaintiffs must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)), at which point the court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id.* At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiffs. *Id.* If not, the court may "de-certif[y]" the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

However, as the purpose of this first stage is "merely to determine whether 'similarly situated' plaintiffs do in fact exist," *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006), plaintiffs' burden at the conditional certification stage is "minimal." *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326 (RJS), 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013). "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P.*, NO. 13-CV-6518 (JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Myers*, 624 F.3d at 555). Documents properly

considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557–58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). These documents "must set forth 'a defendant's plan or scheme to not pay overtime compensation' and must identify 'by name similarly situated employees.'" *Fernandez v. On Time Ready Mix, Inc.*, No. 14-CV-4306 (BMC), 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)). But "[i]n making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950 (JFB)(ARL), 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

Consistent with the "minimal" burden of proof assigned to plaintiffs at the conditional certification stage, the court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage-and-hour claims, the court should treat plaintiffs' attestations as true. *See Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

However, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, No. 10-CV-7735 (NRB), 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'"

*Myers*, 624 F.3d at 555 (quoting *Dybach*, 942 F.3d at 1567).  "Conclusory allegations are not enough."  *Morales v. Plantworks, Inc.*, No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Wright, Miller & Kane, 7B Federal Practice and Procedure § 1807 (3d ed. 2002)).

Plaintiffs provide sufficient factual detail to enable the Court to conclude, at least preliminarily, that they are similarly situated to the other current and former employees in the converting department at the Walden facility.  At the outset, Plaintiffs include information regarding duties and hours worked of those employed in the converting department.  (Jackson Aff. at ¶¶ 4–5, 8; Perez Aff. at ¶¶ 4–5, 8; Cruz Aff. at ¶ 4, 6.)  Plaintiffs provide this information based on their personal experiences and daily observations, which together span decades of time at the Walden facility.  (*See generally* Jackson Aff. at ¶ 3; Perez Aff. at ¶ 3; Cruz Aff. at ¶ 3.)

Plaintiffs also allege, and ProAmpac does not dispute, that employees in the converting department were subject to the same rounding policy.  Specifically, Plaintiffs attest that ProAmpac (1) required employees to arrive early and begin work five-to-fifteen minutes ahead of their scheduled shift times, but (2) did not compensate employees for that extra time and instead rounded Plaintiffs' time in a manner that always benefited ProAmpac.  (Jackson Aff. at ¶¶ 9–15; Perez Aff. at ¶¶ 9–15; Cruz Aff. at ¶¶ 7–14.)  ProAmpac counters that (1) Plaintiffs' allegations are belied by time records which show Plaintiffs "frequently punched in at or very near their scheduled start time, sometimes after," and (2) the rounding policy "often inured *to the employees' benefit*." (Defendants' Memorandum of Law in Opposition to Motion to Conditionally Certify ("Defs. Opp.") at 5, ECF No. 36 (emphasis in original).)

Although ProAmpac disputes whether it indeed implemented any policy to require employees arrive early for their scheduled shifts, ProAmpac's position is countered by Plaintiffs'

own personal experiences and daily observations. *E.g., Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 114 (S.D.N.Y. 2015) (collecting cases) ("[W]hile allegations supporting certification must be specific rather than conclusory, a plaintiff may satisfy her burden with personal observations." (internal citations omitted)).  Moreover, even if time records showed Plaintiffs *consistently* arrived less than five minutes before work, it is conceivable that ProAmpac articulated an aspirational policy that it did not intend to enforce with disciplinary measures. Plaintiffs rely upon personal knowledge to allege the existence of an early arrival policy, and ProAmpac has not overwhelmed the Court with facts to the contrary.  Whether the policy in fact existed is a factual determination that the Court may resolve at a later stage.  *See, e.g., Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 126 (S.D.N.Y. 2022) ("Consistent with the minimal burden of proof assigned to plaintiffs at the conditional certification stage, the court should not weigh the merits of the underlying claims.") (internal quotations and citations omitted).

Whether an early arrival policy in fact existed, however, does not lie at the crux of Plaintiffs' claims; instead, Plaintiffs' claims rise and fall with whether ProAmpac's rounding policy in fact deprived Plaintiffs of compensation for actual hours worked.  (SAC at ¶¶ 47–51.) Relying on "incontrovertible time and pay records," ProAmpac takes issue with Plaintiffs' allegation that ProAmpac rounded time in a manner that "always" inured to ProAmpac's benefit. (Defs. Opp. at 5.)  Far from "incontrovertible," however, these time records reveal a different story than the one ProAmpac tries to tell.  For one, ProAmpac concedes that "[t]here are also instances when the neutral rounding policy did inure to ProAmpac's benefit."  (Defs. Opp. at 5 n.3.)  To that end, Plaintiffs argue, "[I]n fact, Plaintiff[s'] work-time was more often rounded-down and, therefore, Plaintiffs provided uncompensated labor to Defendants for multiple minutes— sometimes as many as 15 minutes—each day."  (Plaintiffs' Reply Memorandum of Law in Further

Support of Motion to Conditionally Certify ("Plfs. Reply") at 6, ECF No. 35.)  Although Plaintiffs offer little more than personal knowledge and daily observations to substantiate their allegations, the time records provided by ProAmpac corroborate Plaintiffs' position.  *See Bittencourt*, 310 F.R.D. at 113–14 (holding that personal affidavits and pay stubs sufficiently established defendants paid plaintiffs less than the minimum hourly rate).  The Court's own review of the time records likewise confirms Plaintiffs' position.  Analyzing the time stamps for every shift worked by Ms. Jackson, Mr. Perez, and Mr. Gallardo between April 2019 and December 2021 (*see* Declaration of Emilia Dominguez ("Dominguez Decl.") at Exs. B–D, ECF No. 38), the Court calculated the difference between the number of hours worked and the number of hours paid.  Ms. Jackson, Mr. Perez, and Mr. Gallardo each worked *dozens* of hours more than the number of hours for which they were paid.  Notwithstanding the Court's analysis, at the very least the time records substantiate Plaintiffs' allegations that ProAmpac did not pay Plaintiffs for every minute worked.  In light of these time records, which corroborate Plaintiffs' personal knowledge, and because ProAmpac appears to concede it applied this rounding policy to other employees in the converting department (*see* Dominguez Decl. at ¶¶ 4–5), Plaintiffs have met their minimal burden in showing former and current converting department employees were subject to an unlawful rounding policy.

Whereas Plaintiffs leverage time records to substantiate their personal knowledge regarding ProAmpac's rounding policy, Plaintiffs are unable to substantiate their allegations regarding their "tools of the trade" claim.   Plaintiffs attest that ProAmpac "required other employees in the converting department to pay out of pocket for necessary expenses" and "did not completely reimburse them for those expenses."  (Jackson Aff. at ¶ 19; Perez Aff. at ¶ 22; Cruz Aff. at ¶ 17.)  Plaintiffs add that this knowledge is based on "overhear[ing] workers saying it." (Jackson Aff. at ¶ 19; Perez Aff. at ¶ 22.)  Plaintiffs' showing is devoid of important information.

For example, Plaintiffs do not provide any information regarding *who* they overheard or specifically *what* they overheard. Plaintiffs also fail to proffer how much money other employees spent on out-of-pocket expenses, how often other employees incurred these expenses, and how these expenses "remove [these employees' wages] outside of the minimum wage requirements." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013); *see supra* at 6. Nothing in the record substantiates Plaintiffs' allegations that other employees were forced to purchase equipment and tools which therein decreased other employees' wages below minimum wage. Even if Plaintiffs show "that *they* were" subject to an unlawful policy where ProAmpac failed to properly reimburse Plaintiffs for "tools of the trade," Plaintiffs "have failed to make a sufficient showing that the same was true for other potential plaintiffs." *Levinson v. Primedia Inc.*, No. 02-CV-2222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (emphasis in original).

The same conclusion applies insofar as Plaintiffs move to conditionally certify members of the printing department. Plaintiffs have provided no information regarding the duties of printing department employees. Nor have Plaintiffs proffered the basis of their personal knowledge regarding ProAmpac's policies as applied to the printing department. Moreover, Plaintiffs do not even attest that printing department employees were forced to pay out-of-pocket expenses. (*E.g.,* Jackson Aff. at ¶ 19 ("To my knowledge, ProAmpac also required other employees *in the converting department* to pay out of pocket for necessary expenses for doing their jobs.") (emphasis added)). Whereas Plaintiffs speak from personal knowledge as converting department employees, Plaintiffs must make some showing as to why the Court ought to credit their observations of printing department employees. But Plaintiffs make no such showing other than the vague allegation, "I know this because I would see the other workers when I went to work." (Jackson Aff. at ¶ 6; Perez Aff. at ¶ 6.) Plaintiffs' vague allegation begs questions. What duties

16

are assigned to printing employees such that they would need to arrive early to work?  Do printing employees work under the same supervisors and managers?   Was an early arrival policy communicated in meetings to both the converting department and printing department?  Were Plaintiffs at those meetings?  Are Plaintiffs aware of any printing department employees who consistently arrived early?  Unlike for converting department employees, Plaintiffs cannot answer these questions solely on the basis of their own personal knowledge and time records.  As such, the Court will not conditionally certify printing department employees as members of the FLSA collective.  *See, e.g., Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 128 (S.D.N.Y. 2022) ("While he does allege that these other non-managerial employees often worked overtime, the Court cannot fairly infer from that fact alone that they labored under similar working conditions and thus suffered the same violations of the FLSA—namely, that they were inadequately paid.").

Accordingly, at this stage, this Court finds it appropriate to grant conditional certification of a collective that includes only current and former employees of the converting department who held non-supervisory positions.  At this stage, the Court will not conditionally certify a collective that includes employees of the printing department.  Moreover, the conditional certification only applies to the claim that ProAmpac violated the FLSA by failing to (1) compensate Plaintiffs and others similarly-situated for all hours worked and (2) pay Plaintiffs the overtime premium rate for that unpaid time.  The conditional certification does not include the claim that ProAmpac violated the FLSA by failing to reimburse Plaintiffs for purchasing required work equipment and tools.

## II.      Time Period for Conditional Collective Action

Plaintiffs ask the Court to authorize a six-year notice period for the notice of the FLSA collective action.  (Plfs. Mem. at 14–16.)  Because Plaintiffs have also asserted NYLL claims and indicated an intent to seek certification of a Rule 23 class for those claims, Plaintiffs argue a six-

year notice period "will not only effectuate notice to potential opt-in plaintiffs for the FLSA class—some of whom may be able to demonstrate issues of equitable tolling that allow their claims past the statute of limitations to be adjudicated—but will also provide both parties with an efficient means to evaluate their positions with respect to an anticipated New York Labor Law class." (*Id.* at 15.)  Lastly, Plaintiffs ask the Court to "time the starting of opt-in plaintiffs' claims –including those already filed – to the filing of the Complaint rather than to the filing of the consent to sue forms." (*Id.*)

Ordinarily, the FLSA statute of limitations is two years.  29 U.S.C. § 255(a).  If the FLSA violation was "willful," however, the statute of limitations is extended to three years.  *Id.*  To show a violation is "willful," "[m]ere negligence is insufficient."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009).  Instead, "[a]n employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted).  Where parties dispute the willfulness of the violations, courts typically apply the three-year, rather than two-year, statute of limitations.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007).  Here, Plaintiffs allege ProAmpac's conduct was "willful" (SAC at ¶ 104), and the record suggests ProAmpac subjected Plaintiffs to a rounding policy that ProAmpac knew must "fully compensate[ ] [employees] for all the time they actually work" (*id.* at ¶ 48 (citing 29 C.F.R. § 785.48)).  And yet, as conceded by ProAmpac and confirmed by the Court, that rounding policy sometimes, if not often, inured to ProAmpac.  *See supra* at 15.  For their part, ProAmpac does not appear to dispute that the statute of limitations ought to be three years.  (Defs. Opp. at 24 ("It is beyond dispute that the statute of limitations for FLSA claims, which are all that is at issue on this Motion, is two years

18

(or, at most, three years if a showing of willfulness is made).").)  As such, the FLSA statute of limitations is three years.  *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (Nathan, J.) (concluding FLSA's three-year limitations period was appropriate because "Plaintiff alleges," in one paragraph of the complaint, that "Defendants' FLSA violations were willful").

Despite the three-year statute of limitations, Plaintiffs ask the Court, as stated above, to authorize a six-year notice period.  (Plfs Mem. at 14–16.)  "Cases adopting six-year periods have been based on supposed 'economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations,' while cases using three-year periods 'have cited the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'"  *Ramos v. Platt*, No. 13-CV-8957 (GHW), 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014) (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 563–64 (S.D.N.Y. 2013) (collecting cases)).  Exercising its "discretion to facilitate notice of FLSA claims," which is "premised on [the Court's] case management authority," the Court declines to authorize a six-year notice period at this time.  *Id.* (declining to authorize six-year notice period "where no motion for class certification of the NYLL claims is simultaneously pending").

Plaintiffs next ask the Court "permit notice to be keyed to the three-year period prior to the filing of the complaint," "rather than to the filing of the consent to sue forms."  (Plfs. Mem. at 15–16 (citations omitted).)  The "statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint."  *E.g., Gaspar*, 2014 WL 4593944, at *7 (citations omitted).  However, because

"equitable tolling issues often arise as to individual opt-in plaintiffs[,] . . . courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Id.* (citation and internal quotation marks omitted).  Defendants "will not be prejudiced by a potentially over-inclusive notice" by using the date of the complaint's filing because it would "increase the likelihood that more party plaintiffs with timely claims consent to opt in, with the understanding that at the appropriate stage in the litigation, Defendants will have an opportunity to argue that each plaintiff's claim is untimely because equitable tolling does not apply." *Alvarado Balderramo v. Taxi Tours, Inc.*, No. 15-CV-2181 (ER), 2017 WL 2533508, at *6 (S.D.N.Y. June 9, 2017).

Here, there is a particularly strong basis for equitable tolling given the delay in ruling on this motion. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015).  Indeed, some courts in this district "have found that the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is enough to grant equitable tolling." *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 528 (S.D.N.Y. 2015) (citations omitted).  Moreover, ProAmpac does not appear to object to Plaintiffs' request for relation back to the filing of the Complaint.

Accordingly, the Court will authorize a three-year notice period and concludes that the three-year statute of limitations should extend from the date of the filing of Plaintiffs' complaint.

### III.      Production of Potential Opt-In Plaintiff Information

Plaintiffs next ask the Court to order ProAmpac to produce to Plaintiffs "a spreadsheet, in a Microsoft Excel format, of all potential opt-in plaintiffs with the names, last known addresses,

last known telephone numbers, last known email addresses, and dates of employment, within fifteen days of the Court's Order granting conditional certification." (Plfs. Mem. at 17.)

Courts in this Circuit "routinely grant . . . motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification. *Anglada v. Linens 'N Things, Inc.*, No. 06-CV-12901 (CM)(LMS), 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007). Likewise, courts "commonly grant" requests for production of mailing addresses and dates of employment for the potential opt-in plaintiffs. *See Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2015 WL 7076009, at *4 (S.D.N.Y. Nov. 12, 2015).

While courts in this District vary in their willingness to order production of telephone numbers and email addresses, it is increasingly clear that this information permits a more efficient means of providing notice than first class mail. *See, e.g.*, *Diatta v. Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-CV-8228 (KPF), 2016 WL 3020933, at *10 (S.D.N.Y. May 23, 2016) (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members"); *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795 (RWS), 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs). In addition, "it is by now fairly clear that telephone numbers and email addresses permit a more efficient means of providing notice than mailing

addresses alone, while minimally intruding on the employees' privacy." *Guevara v. Fine & Rare Operations LLC*, No. 20-CV-5330 (BCM), 2022 WL 103376, at *9 (S.D.N.Y. Jan. 10, 2022).

Plaintiffs' request is granted. The Court will require ProAmpac to produce to Plaintiffs' counsel a spreadsheet, in a Microsoft Excel format, of all potential opt-in plaintiffs with the names, last known addresses, last known telephone numbers, last known email addresses, and dates of employment, of all current and former employees of the converting department who held non-supervisory positions on or after April 15, 2019.

### IV.    Notice and Consent Form

#### a.    Methods of Notice

Plaintiffs ask the Court for permission to translate the proposed notice into Spanish. (Plfs. Mem. at 19–20.) "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016). ProAmpac does not object. Plaintiffs' unopposed request to so translate the notices is granted.

Plaintiffs next ask the Court permit Plaintiffs to send notices to all potential opt-in plaintiffs by mail, email, text message, and WhatsApp. (Plfs. Mem. at 18–19.) Plaintiffs also seek permission to post notices at the Walden facility and on Plaintiffs' counsel's website. (*Id.* at 21–23.)

The Court agrees that disseminating the Notice by mail, email, text message, and WhatsApp is appropriate. *See Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (permitting notice to be "disseminated in any relevant language via mail, email, text, or social media platform"). WhatsApp is more akin to a standard, direct messaging platform than a social media platform and will help distribute the notice to potential opt-in plaintiffs who may use

WhatsApp as an equivalent to standard text messages.  *Cf. Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *11 (E.D.N.Y. Sept. 30, 2021) (permitting issuance of notices via text and WhatsApp "because of the similarities between standard SMS text message and WhatsApp").  Similarly, posting the notice at Defendants' physical location is a generally acceptable form of distributing information related to such notices, and is therefore approved.  *See Ni v. Red Tiger Dumpling House Inc*, No. 19-CV-3269 (GRB)(AKT), 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) ("Courts in the Second Circuit regularly approve plaintiffs' requests to post notices and consent forms in non-public areas where potential collective members are likely to congregate, such as clock-in stations or break rooms." (internal citations and quotation marks omitted)).

The Court, however, will not authorize Plaintiffs to post the notice on Plaintiffs' counsel's website.  As this Court has previously suggested, it is "unpersuaded that such means are necessary, and shares many of the concerns expressed by other courts in the Second Circuit in response to such requests."  *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 135 (S.D.N.Y. 2022); *see Rieske v. Gov't Emps. Ins. Co. Inc.*, No. 21-CV-4122 (JMA)(AYS), 2022 WL 17127745, at *9 (E.D.N.Y. Nov. 22, 2022) (finding "the creation of a website that would permit potential opt-in plaintiffs to electronically submit a consent form to be unnecessary since potential opt-in plaintiffs are likely to be reached by the several forms of notice granted," including mail, email, and text message).

b.   *Content of Notice*

ProAmpac lodges two objections to the content of Plaintiffs' proposed notice, asking for the Court to order that the notice (1) "apprise[]" potential opt-in plaintiffs "of their discovery obligations, including the fact that they could be deposed or required to participate in the written

discovery process, and could be ordered to testify at trial" (Defs. Opp. at 23), and (2) include

contact information for defense counsel (*id.* at 24).

"Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized

notice should take, nor what provisions the notice should contain." *Lee v. ABC Carpet & Home*,

No. 00-CV-984 (DAB), 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008). "Under the FLSA, the

content of the notice is left to the court's discretion." *Delaney v. Geisha NYC, LLC*, 261 F.R.D.

55, 59 (S.D.N.Y. 2009); *accord Lopez v. JVA Indus., Inc.*, No. 14-CV-9988 (KPF), 2015 WL

5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (noting that the FLSA "vests the district court with broad

discretion" with respect to the notice of pending litigation to be provided to potential opt-in

plaintiffs).

"The overarching policies of the FLSA's collective suit provisions require that the

proposed notice provide 'accurate and timely notice concerning the pendency of the collective

action, so that [potential plaintiffs] can make informed decisions about whether to participate.'"

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (citations omitted)).  With that in

mind, the notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the
> nature of the lawsuit filed and the relief being sought; (3) the proposed class
> composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court
> has not taken any position regarding the merits of the lawsuit; (6) how to join the
> lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not
> joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant
> contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).  Courts in this District

have also held that the notice should include a warning that opt-in plaintiffs may be required to

provide information, appear for deposition, or testify in court.  *See Salomon*, 847 F. Supp. 2d at 567 (modifying proposed notice to explain such a possibility).

In light of ProAmpac's objections, the notice shall be amended to include the following language: "If you join this lawsuit, you may be asked to give testimony and information about your work for [ProAmpac], to help the Court decide whether you are owed any money."  *Bethel v. BlueMercury, Inc.*, No. 21-CV-2743 (KPF), 2022 WL 3594575, at *15 (S.D.N.Y. Aug. 22, 2022). The notice shall also be amended to include defense counsel's contact information.  *Id.* (collecting cases).

### c.  *Opt-In Period and Reminder*

Plaintiffs asks for permission to provide 90 days for potential opt-in plaintiffs to submit their consent to sue forms.  (Plfs. Mem. at 20–21.)  Plaintiffs also ask for permission to send a reminder to non-responsive potential opt-in plaintiffs.  (*Id.* at 23–24.)

The standard opt-in period in this Circuit, following conditional certification, is 60 days. *See Yap*, 146 F. Supp. 3d at 566–67 ("Courts in this Circuit routinely restrict the opt-in period to sixty days.") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK)(VMS), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)).  Courts adopt a 90-day opt-in period only where the parties agree or if special circumstances require it.  *See Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 272 (D. Conn. 2020).

Here, Plaintiffs suggest special circumstances require a 90-day opt-in period because "as a result of the recent COVID-19 pandemic and the upheaval in the employment market it has created, Defendants' workforce of potential opt-ins has likely turned over at a higher rate in the past few years."  (Plfs. Mem. at 20.)  In addition, Plaintiffs suggest ProAmpac's information "may be out-of-date and eligible opt-ins may no longer be employed by Defendants, making them less likely to

become aware of the action from coworkers or posted notices at the workplace." (*Id.* at 20–21.) Plaintiffs' argument, however, is speculative and generalized; Plaintiffs do not proffer any factual basis to suggest ProAmpac in fact has had a higher rate of turnover. *See Gui Zhen Zhu*, 424 F. Supp. 3d at 272 (collecting cases) (ordering 60-day opt-in period but noting that the court "may entertain opt-in plaintiffs' untimely motions to join the collective action 'on a showing of good cause for the delay'" (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449–450 (S.D.N.Y. 2011)). Accordingly, the opt-in period is 60 days. Nonetheless, the Court will allow Plaintiffs to send a reminder to non-responsive potential opt-in plaintiffs halfway through the opt-in period. *See Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 134 (S.D.N.Y. 2022) (citing *Chhab v. Darden Rests., Inc.,* No. 11-CV-8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (finding reminder appropriate "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in")).

## CONCLUSION

For the foregoing reasons, the Court GRANTS ProAmpac's partial motion to dismiss. Plaintiffs' NYLL § 193 and § 195 claims are dismissed without prejudice.

The Court GRANTS in part and DENIES in part Plaintiffs' motion to conditionally certify. Plaintiffs' motion is GRANTED insofar as the conditionally certified class includes current and former employees of the converting department who held non-supervisory positions. Plaintiffs' motion is likewise GRANTED insofar as the conditional certification applies to the claim that ProAmpac violated the FLSA by failing to (1) compensate Plaintiffs and others similarly-situated for all hours worked and (2) pay Plaintiffs the overtime premium rate for that unpaid time.

Plaintiffs' motion is DENIED with respect to the conditional certification of non-supervisory employees of the printing department. Plaintiffs' motion is also DENIED with respect

to the claim that ProAmpac violated the FLSA by failing to reimburse Plaintiffs for purchasing required work equipment and tools.

Accordingly, it is hereby ORDERED

1. **On or before October 16, 2023**, Defendants shall produce to Plaintiffs' counsel a spreadsheet, in a Microsoft Excel format, of all potential opt-in plaintiffs with the names, last known addresses, last known telephone numbers, last known email addresses, and dates of employment, of all current and former employees of the converting department who held non-supervisory positions on or after April 15, 2019.

2. **On or about November 6, 2023**, the parties shall, after meeting and conferring, prepare and submit to the Court, for approval, a revised form of notice (and related consent form) incorporating the Court's rulings delineated elsewhere in this order.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 28 and 32.

SO ORDERED.

Dated:     September 25, 2023
           White Plains, New York

_____
     NELSON S. ROMÁN
United States District Judge