UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NOEMY JACKSON, ROBERTO PEREZ, and
RAYMUNDO GALLARDO, on behalf of themselves
and all other similarly situated individuals,

                         Plaintiffs,

        -against-

AMPAC PAPER, LLC,[1]

                         Defendant.
------------------------------------------------------------------x

**OPINION & ORDER**

22 Civ. 3120 (NSR)(JCM)

       Plaintiffs Noemy Jackson, Roberto Perez, and Raymundo Gallardo (collectively, "Named

Plaintiffs"), on behalf of themselves and all other similarly situated individuals, commenced this

action against Defendants Ampac Paper, LLC, ProAmpac LLC a/k/a ProAmpac, and Ampac

Holdco Inc. a/k/a/ ProAmpac (collectively, "Defendants"), alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as the New York Labor Law

("NYLL"), §§ 190, *et seq.* and 650, *et seq.* (Docket No. 1).  Presently before the Court is

Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, Provisional

Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and

Approval of Proposed Notice of Settlement and Related Relief ("Motion"). (Docket No. 126).

For the reasons set forth below, Plaintiffs' Motion is granted.[2]

---

[1] Plaintiffs move to dismiss their claims against Defendants ProAmpac LLC a/k/a ProAmpac and Ampac Holdco Inc. a/k/a ProAmpac, and amend the case caption to this effect. (Docket No. 127 at 34).  As discussed, *infra* Section III(G), the Court grants Plaintiffs' motion.

[2] This motion is before the Court for entry of a final order on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 131).

## I. BACKGROUND

### A. Procedural Background

On April 15, 2022, the Named Plaintiffs filed a Collective and Class Action Complaint against Defendants. (Docket No. 1). They allege that while they were employed as hourly paid manual laborers in the converting department of Defendants' Walden, New York paper processing plant, they suffered various wage and hour violations, including unlawful wage deductions, uncompensated "off the clock" labor, and noncompliance with NYLL's wage statement requirements. (Docket No. 51-1 ¶¶ 102-31).

On September 25, 2023, the Honorable Nelson S. Román granted Defendants' motion to dismiss, in part, and dismissed Plaintiffs' NYLL §§ 193 and 195 claims. (Docket No. 55). Plaintiffs moved to reconsider Judge Román's decision, or alternatively, sought certification for interlocutory appeal the question of whether Plaintiffs had standing to assert the § 195 claims. (Docket No. 56). On July 11, 2025, Judge Román certified for interlocutory appeal the question of when an employee has standing to bring a § 195 claim, but otherwise denied Plaintiffs' motion for reconsideration. (Docket No. 96). While Plaintiffs' motion for interlocutory appeal was pending, the Second Circuit issued a decision relating to the issue of standing under § 195. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). Thereafter, the Second Circuit remanded the instant case to the District Court for further consideration, asserting that "[h]ow [*Guthrie*] applies to this case may be raised in the district court in the first instance." (Docket No. 103). Plaintiffs subsequently filed another motion for reconsideration of Judge Román's September 2023 decision. (Docket No. 106).

Plaintiffs moved for conditional certification of their FLSA claims as a collective action on November 23, 2022. (Docket Nos. 32, 33). On September 23, 2023, Judge Román granted

Plaintiffs' motion for conditional certification. (Docket No. 55).  In his order, Judge Román directed Defendants to identify individuals who, according to them, had been employed as non-exempt, hourly paid employees in the converting department at Defendants' Walden plant at any time during the three years prior to commencement of this action. (*Id.*).  Plaintiffs' counsel attempted to provide each of these individuals with a notice of pendency of lawsuit and Consent to Sue form. (Docket No. 66).  In total, 112 current and former hourly paid manual laborers in the converting department at Defendants' Walden plant, who were employed at any time during the three years prior to commencement of this action, filed Consent to Sue forms in this case. (Docket No. 127 at 9;[3] *see also* Docket Nos. 77, 81, 82, 83, 90, 91, 92, 93, 95).

On April 30, 2025, counsel advised the undersigned that they had settled the matter in principle. (*See* April 30, 2025 Minute Entry).  That same day, Plaintiffs' counsel wrote to Judge Román to inform him that the parties had settled in principle. (Docket No. 118).  On June 27, 2025, the parties filed the instant Motion, (Docket No. 126), accompanied by a memorandum of law in support of the Motion, (Docket No. 127), and a Declaration of Robert McCreanor in support of the Motion, (Docket No. 128), with exhibits attached thereto.  In their Motion, Plaintiffs ask the Court to: (1) grant preliminary approval of the Agreement, and enter the Preliminary Approval Order, (Docket No. 128-2); (2) "preliminarily certify the proposed NYLL settlement class under Federal Rule of Civil Procedure 23(b)(3) in connection with the settlement process"; (3) appoint Plaintiffs' counsel as Class Counsel; (4) "grant the Parties' request to include all Class Members (with the exception of those who timely [opt out]) as Class Members subject to the terms of the Settlement Agreement"; (5) schedule the Final Fairness Hearing; (6) approve the Settlement Forms attached to the Agreement, "the proposed manner of notice and

---

[3] All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

the Parties' request that endorsed settlement checks be deemed filed with the Court in

satisfaction of the requirements of 29 U.S.C. § 216(b)"; and (7) "dismiss the claims of ProAmpac

LLC a/k/a ProAmpac and Ampac Holdco Inc. a/k/a ProAmpac with prejudice and amend the

caption so that Ampac Paper, LLC is the only Defendant." (Docket No. 127 at 1-2).

**B.  Agreement Terms**

Along with their Motion, Plaintiffs filed the proposed Joint Stipulation of Settlement and

Release ("Agreement") between Plaintiffs and Defendant Ampac Paper, LLC ("Ampac Paper" or

"Defendant"). (Docket No. 128-1).

**1.  Settlement Class**

Under the Agreement, Class Members are the Named Plaintiffs, Opt-In Plaintiffs, Active

Plaintiffs, and Putative Class Members. (Docket No. 128-1 at 2 § 1.6).  The "Named Plaintiffs"

under the Agreement are Noemy Jackson, Roberto Perez, and Raymundo Gallardo. (*Id.* at 4 §

1.18).  The term "Opt-In Plaintiffs" refers to the "Named Plaintiffs and those individuals who

have filed a timely consent to participate in the Litigation." (*Id.* at 4 § 1.23).  "Active Plaintiffs"

means "those Class Members, other than the Named Plaintiffs and Opt-In Plaintiffs, who were

actively employed by Defendant as converting department employees as of April 29, 2025." (*Id.*

at 2 § 1.3).  "Putative Class Members" refers to:

> individuals—other than the Named Plaintiffs, Opt-In Plaintiffs, and
> Active Plaintiffs—who were employed by ProAmpac as non-
> exempt, hourly converting department employees at ProAmpac's
> manufacturing facility located in Walden, New York from April 15,
> 2016 through July 31, 2024 (such Putative Class Members are also
> referred to herein collectively as the 'Putative New York Class') and
> who are included in the list annexed [to the Agreement] as Exhibit
> D.

(*Id.* at 5 § 1.27).

4

**2. Settlement Amount and Releases**

The Agreement creates a fund of $1,200,000 to settle this action. (*Id.* at 12 § 3.1(A)). The Class Members will all receive a minimum of $50, while an "additional prorated portion shall be calculated based on Plaintiffs' [c]ounsel's calculation of alleged damages owing to each individual during the [relevant period]." (*Id.* at 15 § 3.4(A)-(B)). Based on the Agreement, "all Participating Class Members will receive *at least* nearly 100% of what Plaintiffs' [c]ounsel determined to be their owed wages based upon a review of Defendant's time and pay records." (Docket No. 128 ¶ 20) (emphasis in original). Only the Class Members who did not previously opt into this action, or who were not employed by Ampac Paper as of April 29, 2025, are required to submit claim forms to be compensated through the Agreement. (Docket Nos. 128 ¶ 11; 128-1 at 7-8 § 2.4(B)). The other Class Members will automatically receive compensation to which they are entitled under the Agreement. (Docket Nos. 128 ¶ 11; 128-1 at 8 § 2.4(C)).

For their contributions to the case,[4] under the Agreement, the Named Plaintiffs are entitled to service awards of up to $10,000, and the seven FLSA Opt-In Plaintiffs who participated in individualized discovery (including depositions) may apply for service awards of up to $3,000. (Docket No. 128-1 at 14-15 § 3.3(A)). The Agreement provides that Class Counsel is permitted to seek an award of up to $393,333 plus no more than $20,000 in costs. (Docket Nos. 127 at 10; 128-1 at 14 § 3.2(A)). The $393,333 figure constitutes one third of the gross settlement after deduction of costs. (Docket No. 127 at 14). The Agreement is not contingent on the amount in attorneys' fees and costs ultimately awarded by the Court. (Docket No. 128 ¶ 8).

---

[4] The Named Plaintiffs provided facts and information necessary to bring this action and obtain conditional certification. (Docket No. 128 ¶ 26). They responded to discovery requests and were deposed. (*Id.*). In addition, designated Opt-In Plaintiffs were deposed. (*Id.*). Additionally, two of the Named Plaintiffs were present at the first mediation, and all Named Plaintiffs played a critical role in ultimately reaching this settlement. (*Id.*).

### 3.  Settlement Administrator, Notice, and Opportunities to Opt-Out and Object

The Agreement contemplates that Plaintiffs' counsel will select a Settlement Administrator[5] subject to Ampac Paper's approval. (Docket No. 128-1 at 6 § 2.2).  The Settlement Administrator will be responsible for locating Class Members through reasonable efforts; generating and mailing the Settlement Forms to Class Members; and forwarding any Change of Address Forms and objections to Class Counsel and Ampac Paper's counsel. (*Id.*; *see also* Docket No. 127 at 16).

Furthermore, the Settlement Administrator is responsible for sending applicable notices to Class Members regarding the settlement.[6]  The Agreement contemplates that, within ten days of its execution, the Parties will electronically provide the Settlement Administrator a list of Class Members with their contact information and a calculation of their alleged damages. (Docket No. 128-1 at 7 § 2.4(A)).  Within ten days of the Court's issuing a Preliminary Approval Order, the Settlement Administrator will mail the Court-approved Notices to the appropriate recipients. (*Id.* at 8 § 2.4(B)-(C)).  The Notices will inform Class Members of their opportunities to object, opt out, appear at the Fairness Hearing, and, if applicable, submit a claim form. (*Id.* at 24-39).

Class Members "who do not submit a timely and valid opt-out notice forever and fully release Defendant and all of the ProAmpac Releasees from all wage and hour claims asserted under state and local law[.]" (Docket No. 128-1 at 17 § 4.1(A)).  All participating Class Members who submit consent forms or Claim Forms "forever and fully release Defendant and all

---

[5] In their Motion, Plaintiffs refer to this individual as the "Claims Administrator." (Docket No. 127 at 16).

[6] One notice is to be distributed to those already included in the Settlement Class, (Docket No. 128-1 at 24-31), and the other notice is to be distributed to those who would need to submit a claim form to be included, (*id.* at 32-39) (together, "Notices").

of the ProAmpac Releasees from all FLSA claims asserted in the Litigation[.]" (*Id.* at 17 § 4.1(B)).  Additionally, the Agreement provides that Named Plaintiffs and Opt-In Plaintiffs who receive a Service Award "waive, release, and discharge Defendant and all of the ProAmpac Releasees from all claims, demands, causes of action, and liabilities, whether known or unknown, relating to their employment with ProAmpac[.]" (Docket No. 128-1 at 17 § 4.1(C)).

Class Members must timely inform the Court if they seek to opt out of the settlement. (Docket No. 128-1 at 8-9 § 2.5(A)).  Specifically, each Class Member must ensure that their opt-out notice is post-marked, e-mailed, or faxed within 45 days from the mailing of the Notice to the Class Member. (*Id.*).  Any Class Member who fails to timely and properly submit notice of their desire to opt out will be bound by the Agreement and "deemed to have released his or her state law wage and hour claims … regardless of whether he or she negotiates a Settlement Check." (Docket No. 128-1 at 9 § 2.5(C)).  Class Members who do not opt out, but wish to object to the proposed Agreement, must do so in writing under the Agreement. (*Id.* at 9-10 § 2.6(A)).  A Class Member's objection "must be mailed to the Settlement Administrator … by a date certain forty-five (45) days from the mailing of the notice to the Class Member, but in any case not later than seven (7) days before the Final Fairness Hearing." (*Id.*).  The written objection must "state clearly that the individual object[s] to the settlement and shall state all reasons for the objection." (*Id.*).

The Agreement also provides that the Fairness Hearing will be held at the Court's convenience, but not until 90 days after the Court signs the Preliminary Approval Order. (*Id.* at 10 § 2.7).  Plaintiffs will submit a Motion for Judgment and Final Approval no later than fifteen days before the Fairness Hearing. (*Id.*).  At the Fairness Hearing, the parties will request that the Court certify the New York class for purposes of settlement; enter judgment in accordance with

the Agreement; approve the settlement, including the FLSA settlement; and dismiss the case with prejudice. (*Id.* at 10 § 2.8). The Court will also hear any objections to the Agreement. (*Id.* at 10 § 2.6(B)-(C)). Valid objectors (*i.e.*, those who satisfied the requirements to object) may appear at the Fairness Hearing in person or through counsel. (*Id.* at 10 § 2.6(B)-(C)). An objector who seeks to appear at the Fairness Hearing must state that he intends to do so in his written objection at the time of its submission. (*Id.* at 10 § 2.6(B)).

## II. LEGAL STANDARD

### A. Preliminary Settlement Approval

"A settlement of a class action under [Rule 23] requires court approval." *See Marin v. 310 Bowery Group LLC*, CIVIL ACTION NO. 24 Civ. 1340 (SLC), 2025 WL 893731, at *4 (S.D.N.Y. Mar. 24, 2025) (citing Fed. R. Civ. P. 23(e)). District courts have discretion in approving proposed class action settlements. *Olibares v. MK Cuisine Global LLC*, 21 Civ. 100694 (VSB), 2023 WL 5702595, at *2 (S.D.N.Y. Sept. 5, 2023) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). This process typically involves preliminary approval followed by a fairness hearing. *Olibares*, 2023 WL 5702595, at *2.

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties." *Chang v. Philips Bryant Park LLC*, CIVIL ACTION NO. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020); *see also In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotations omitted) (noting that courts analyzing a class settlement "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate"). A

court assessing whether to preliminarily approve a settlement "need only find probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *Solis v. OrthoNet LLC*, 19-CV-4678 (VSB), 2021 WL 1904984, at *2 (S.D.N.Y. May 11, 2021) (internal quotations omitted). "Under Rule 23(e), in considering a motion for preliminary approval of a class settlement, courts consider whether 'giving notice is justified by the parties' showing that the court will likely be able to[: (i)] approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Marin*, 2025 WL 893731, at *4 (citing Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)). In making this determination, courts consider: (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2)(A)-(D).

In addition to the Rule 23(e)(2) factors, courts also consider whether the agreement is fair and reasonable based on these nine factors established in *City of Detroit v. Grinnell Corp.*, which partially overlap with the factors in Rule 23(e)(2)(C)-(D):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted). In assessing a class settlement, courts "may give weight to the fact that the parties have chosen to settle because the parties and their counsel are in a unique position to assess the potential risks of litigation." *Marin*, 2025 WL

893731, at *4 (internal quotations omitted).

## B. FLSA Settlement Approval

"FLSA allows an employee to bring a claim on behalf of other similarly-situated employees, but the other employees do not become plaintiffs in the action unless and until they consent in writing." *Marin*, 2025 WL 893731, at *5 (quoting *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 85-86 (E.D.N.Y. 2019)); *see also* 29 U.S.C. § 216(b).

The parties may not privately settle with prejudice their FLSA claims without approval of the court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). "In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). "The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (internal quotations and citations omitted). "This standard for approval of a FLSA settlement 'is lower than for a class action under Rule 23[,]' such that '[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved.'" *Marin*, 2025 WL 893731, at *5 (quoting *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013)).

## C. Interaction Between Rule 23 and FLSA Settlement Approval

"Although Rule 23 allows class members to opt out of a class-wide settlement, § 216(b) of the FLSA requires that employees opt into any FLSA collective action." *Olibares*, 2023 WL 5702595, at *3. Each employee must give written consent to become a party, which should subsequently be "filed in the court in which such action is brought." 29 U.S.C. § 216(b). Therefore, unlike in Rule 23 class actions, "in an FLSA collective action, only potential plaintiffs who opt in can be bound by the judgment or benefit from it." *Olibares*, 2023 WL 5702595, at *3 (internal quotations omitted)*. "[B]ecause FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action." *Id.* (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)).

## D. Conditional Settlement Class Certification and Appointment of Class Counsel

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims ... of the representative parties are typical of the claims ... of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Beyond these four factors, "class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Zimmerman v. Paramount Global*, 23-CV-2409 (VSB), 22-CV-9355 (VSB), 2025 WL 763734, at *4 (quoting *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. 2014)). To certify a class under Rule 23(b)(3), as Plaintiffs seek to do here, a court must also find "that the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Zimmerman*, 2025 WL 763734, at *4.

## III.  DISCUSSION

### A.  Rule 23(e) and Corresponding *Grinnell* Factors

After considering Rule 23(e) and the corresponding *Grinnell* factors, the Court finds that they all favor preliminary approval of the Agreement.

### 1.  Adequacy of Representation

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted).

Here, the Named Plaintiffs' interests are not antagonistic to the class.  They have suffered the same alleged injury as the Class Members, and even though the Class Members may receive different amounts in the settlement, the payments "bear a direct, pro rata relationship to the variations" of the Class Members' injuries. *See Zimmerman*, 2025 WL 763734, at *4. Furthermore, the record shows that the Named Plaintiffs have been actively engaged with this litigation from before commencement of the action through discovery, and vigorously participated in mediation to resolve the claims on a class-wide basis. (*See* Docket No. 127 at 27). In addition, Plaintiffs' counsel have established that they have the necessary experience and qualifications, and have effectively managed this litigation, which included substantial discovery and a successful mediation.  Therefore, this factor weighs in favor of approval.

## 2. Arm's-Length Negotiations

Under Rule 23(e)(2)(B), the Court finds that the proposed Agreement was negotiated at arms's length. Plaintiffs' counsel are experienced in class representation of low-wage and immigrant workers, while Defendants' counsel are experienced management-side attorneys. (Docket No. 127 at 18). All counsel fully apprised themselves of the facts and issues in this case. Counsel thoroughly reviewed the relevant hours and pay data for the Class Members, assessed the litigation risks, and navigated the settlement with two neutral third-party mediators' assistance. (*Id.*); *see also Lea v. Tal Educ. Grp.*, 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) ("Courts have … recognized a presumption of fairness when a settlement is reached with the assistance of a mediator."). Thus, this factor also supports preliminary approval.

## 3. Adequacy of Relief

To assess whether the Agreement provides adequate relief to the Settlement Class, the courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class … ; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). The last factor does not apply here, so the Court only considers the first three factors.

The first factor under Rule 23(e)(2)(C)(i), "which considers the costs, risks, and delay of trial and appeal, 'subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial.'" *Marin*, 2025 WL 893731, at *7 (quoting *Mikhlin v. Oasmia Pharm. AB*, 19 Civ. 4349 (NGG)(RER), 2021 WL 1259559, at *5 (E.D.N.Y.

Jan. 6, 2021)).  "Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  It is clear from the record that the parties undertook considerable time and expense to evaluate the claims and defenses and engage in "vigorous" settlement discussions. (Docket No. 127 at 19).  Had the parties not settled, Plaintiffs would have moved for Rule 23 class certification, which Defendants likely would have at least partially opposed. (*Id.*).  Plaintiffs also had a pending motion for reconsideration of Judge Román's dismissal of their § 195 claims, (Docket No. 106), which could have also caused delays. Furthermore, had this case not settled, trial of this matter would have been complicated, lengthy, and expensive.

Courts evaluating the second Rule 23(e)(2)(C) factor must consider "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(2).  "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Mikhlin*, 2021 WL 1259559, at *6 (internal quotations omitted).  The Agreement provides that each Class Member will receive at least $50, plus his or her *pro rata* share as calculated by counsel. (Docket No. 128-1 at 15 § 3.4(A)-(B)).  The parties have also agreed that Plaintiffs will select a Settlement Administrator tasked with locating Class Members and providing notice. (*Id.* at 6 § 2.2).  The Court considers this process efficient, effective, and equitable, which weighs in favor of approval.

The third factor set out in Rule 23(e)(2)(C)(iii) contemplates that before final approval, the court will "review Plaintiffs' application for attorneys' fees, taking into account the interests

of the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020).  In the Second Circuit, one method for calculating fees is the "percentage of the fund method." *Amigon v. Safeway Construction Enterprises, LLC*, 20-CV-5222 (PK), 2024 WL 5040436, at *5 (E.D.N.Y. Dec. 9. 2024) (internal quotations omitted).  Under this method, the court considers if the requested fees are reasonable compared to the settlement amount. *Id.*  "Factors to consider include fees awarded in similar cases, the risks to [c]lass [c]ounsel, and the lodestar calculation." *Id.*  Here, the Agreement provides that at the Fairness Hearing, Class Counsel will seek an award of attorneys' fees in the amount of $393,333, costs of settlement administration of no more than $25,000, and other costs of no more than $20,000. (Docket No. 128-1 at 14 § 3.2(A)).  This is approximately 33% of the total settlement, which is consistent with fee awards in other wage and hour class action settlements in the Second Circuit. *See, e.g.*, *Pickard v. OnSite Facility Servs., LLC*, 5:22-cv-207 (AMN/ML), 2023 WL 7019256, at *10 (S.D.N.Y. Oct. 25, 2023).  While the Court reserves approval pending receipt of Plaintiffs' counsel's formal application for attorneys' fees and costs, this third factor does not preclude preliminary approval of the Agreement.

All three applicable Rule 23(e)(3)(C) factors, along with the corresponding *Grinnell* factors, therefore weigh in favor of preliminary approval.

### 4.  Equitable Treatment

Under Rule 23(e)(2)(D), the court must also consider whether class members are subject to equitable treatment under the Agreement.  To determine this, the court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) adv. cmte. n. (2018). Other than the service awards sought for the Named Plaintiffs and some designated Opt-In

Plaintiffs, the Agreement treats all Class Members uniformly; each will receive $50 and a *pro rata* distribution of the net settlement amount. "The [Agreement's] *pro rata* distribution scheme is sufficient evidence of equitable treatment in this regard." *Zimmerman*, 2025 WL 763734, at *6. The Court also finds that the service awards offered in the Agreement are appropriate in this case. Service awards, also known as incentive awards, are common in class actions. *Romero v. La Revise Associates*, L.L.C., 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014). While such awards are not forbidden under Rule 23(e)(2)(D), courts must reject awards that are "excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Moses v. New York Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023). However, the service awards here are appropriate in light of the work that the Named Plaintiffs and certain Opt-In Plaintiffs have contributed to this case, which ultimately resulted in settlement. Furthermore, Class Members will receive at least nearly 100% of what Plaintiffs' counsel determines are their owed wages. (Docket No. 128 ¶ 20).

Thus, the Agreement treats Class Members equitably relative to each other, and this factor accordingly weighs in favor of preliminary approval.

## B. Remaining *Grinnell* Factors

The *Grinnell* factors that do not overlap with Rule 23(e)(3)(C) are "the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, the ability of the defendants to withstand a greater judgment, the range [of reasonableness] of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Amigon*, 2024 WL 5040436, at *6. Each of these factors weigh in favor of preliminary approval.

First, because notice of the settlement has not yet been issued to the Settlement Class, the Court cannot evaluate the reaction of the class. *See Marin*, 2025 WL 893731, at *8. However,

the Named Plaintiffs favor the Agreement, and their approval is probative of the Settlement

Class's reaction. *See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 15-CV-3538

(VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Representative Plaintiffs favor

the Settlement, and their approval is probative of the Class'[] reaction at this time since notice

has not yet been issued.").  Second, regarding the stage of proceedings and amount of completed

discovery, the relevant question is "whether counsel had an adequate appreciation of the merits

of the case before negotiating." *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y.

2013) (internal quotations omitted).  The Court must be assured "'that counsel for [P]laintiffs

have weighed their position based on a full consideration of the possibilities facing them[.]'"

*Marin*, 2025 WL 893731, at *8 (quoting *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95 Civ.

4954 (DAB), 1999 WL 38179, at *2-3 (S.D.N.Y. Jan. 28, 1999)).  The record shows that

Plaintiffs' counsel "undertook significant efforts to obtain relevant information" from the parties

and third parties regarding the case. (Docket No. 127 at 21).  Plaintiffs' counsel gathered a

substantial amount of information, including time and pay data and "thousands of pages of ESI,"

as well as took extensive depositions. (*Id.*).  Furthermore, Plaintiffs' counsel appreciated that,

with respect to Plaintiffs' claims relating to "off the clock" uncompensated labor, certain

credibility determinations could only be made at trial. (*Id.*).  Based on all of this information,

Plaintiffs' counsel concluded that the settlement represents a fair and reasonable sum in light of

the risks. (*Id.*).  The Court is satisfied that counsel sufficiently appreciated the merits at the time

of negotiation and settlement.

Third, with respect to Ampac Paper's ability to withstand a greater judgment, courts have

held that the fact that a defendant can withstand a greater judgment, "standing alone, does not

suggest that the settlement is unfair." *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179,

201 (S.D.N.Y. 2012) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at

178 n.9). This is particularly true where, as here, the other *Grinnell* factors weigh in favor of

approval. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ.

5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Accordingly, although Ampac

Paper is a well-established company that could potentially withstand a greater judgment than

what is represented in the Agreement, this does not prevent the Court from granting preliminary

approval, especially since Plaintiffs' counsel has determined that Class Members will receive at

least nearly 100% of their owed wages.

Fourth, regarding the range of reasonableness of the settlement funds in light of the best

possible recovery and all attendant litigation risks, Plaintiffs assert that the settlement represents

a "good value," although recovery could potentially be larger if Plaintiffs succeeded on all

claims at trial and survived appeal. (Docket No. 127 at 23). Plaintiffs also note that counsel

engaged in a "rigorous" determination of the fair settlement value of litigation before mediation,

as well as the fair settlement value for each individual class member. (*Id.*). In light of the

litigation risks present in this case, and the fact that "all Participating Class Members will receive

*at least* nearly 100% of what Plaintiffs' [c]ounsel determined to be their owed wages," (Docket

No. 128 ¶ 20), the Court concludes that the settlement funds are well within the range of

reasonableness.

Based on the above, the remaining *Grinnell* factors favor preliminary approval.

## C. *Wolinsky* Factors

"[S]ettlement of a collective action does not implicate the same due process concerns as

the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an

FLSA collective action does not prevent a plaintiff from bringing suit at a later date." *Mills v.*

*Capital One, N.A.*, No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015). As a result, for a proposed FLSA settlement, courts simply assess whether the settlement "reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." *Id.*

Still, "the *Wolinsky* factors substantially overlap with other factors that courts consider when reviewing a proposed class action settlement under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion." *Marin*, 2025 WL 893731, at *9 (quoting *Caccavale v. Hewlett-Packard Co.*, 20 Civ. 974 (NJC)(ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024)). Courts have held that an agreement that satisfies the *Grinnell* factors will satisfy the *Wolinsky* factors. *Id.*

The Court has analyzed the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of litigation risks in its *Grinnell* analysis, *see supra* Sections III(A)-(B), and thus, the Court will not address those factors again here. The Court has no reason to doubt that the terms of the Agreement were negotiated at arm's length by experienced counsel. In addition, there is no evidence of collusion between the parties.

Accordingly, the Court concludes that, considering the totality of the circumstances, the Court is likely to find that the Agreement is fair and reasonable under the *Wolinsky* factors.

## D. Provisional Certification of Settlement Class

For settlement purposes, Plaintiffs seek to certify a class of "all individuals who were employed by ProAmpac at any point as non-exempt, hourly converting department employees at its manufacturing facility located in Walden, New York from April 15, 2016 through July 31,

2024" ("Rule 23 Class"). (Docket No. 127 at 23).  The Court grants Plaintiffs' motion.

### 1.  Rule 23(a) Requirements

The Court finds that the Rule 23 Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.  First, the Rule 23 Class has 744 members, which satisfies the Rule 23(a) numerosity requirement. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68-69 (S.D.N.Y. 2018) ("In this Circuit, numerosity is presumed when the putative class has at least forty members.").  Regarding commonality, the primary issues in this case—including "whether Defendants failed to pay minimum wage and overtime wages required for all minutes worked at the beginning and ends of their shifts and failed to provide the wage statements under the NYLL"—are common to the class. (Docket No. 127 at 25).  The typicality requirement is also satisfied because the Named Plaintiffs' claims "[arose] from the same factual and legal circumstances that form the bases of the [Rule 23 Class's] claims." *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 WL 382200, at *2 (S.D.N.Y. Jan. 21, 2011).  Specifically, the Class Members all contend that Defendants regularly failed to pay them for minutes worked at the start and end of their shifts. (Docket No. 127 at 26).  Finally, relating to adequacy, the Class Representatives "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).  As the Court has discussed, the Named Plaintiffs' interests are not antagonistic to that of the class, and they have been actively involved in the litigation from its inception, including through mediation. (Docket No. 127 at 27).

Thus, the four Rule 23(a) factors requirements have been met.

### 2.  Rule 23(b) Requirements

In addition to the Rule 23(a) requirements, the Settlement Class satisfies the Rule 23(b)(3) predominance and superiority requirements.

### i. Predominance

"The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotations omitted); *see also Alves v. Affil. Care of Putnam*, No. 16-CV-1593 (KMK), 2022 WL 1002817, at *22 (S.D.N.Y. Mar. 30, 2022). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Rule 23(b)(3) requires "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

Here, Plaintiffs argue that "all members of the class are unified by common factual allegations—that all Class Members were subject to the same wage and hour policies." (Docket No. 127 at 29). They further note that "[t]hese factual allegations are susceptible to common proof and flow into common legal questions, including whether Defendants had a practice of requiring and/or permitting employees to perform uncompensated labor at the beginning and ends of their shifts." (*Id.*). The Court agrees with Plaintiffs that the predominance requirement is met because the case concerns wage and hour policies that affected multiple Class Members, and the Class Members share a common legal theory that these policies violated the law. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) ("The proposed class also satisfies Rule 23(b)(3) …. [A]ll members of the class are unified by common factual

allegations that Defendant had a policy of not paying Class Members overtime premium pay for hours worked over 40 in a workweek .... They are also unified by a common legal theory—that these policies violated the NYLL.").

### ii. Superiority

The superiority requirement for a proposed class necessitates a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs argue that a class action is a superior mechanism for these Class Members—primarily low-wage immigrant workers who worked for Defendants for brief periods of time and speak little English. (Docket No. 127 at 30).  The Court agrees that class action is a superior method here.  "Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 10 (E.D.N.Y. 2019).

Thus, the Court finds that the Rule 23(a) and 23(b)(3) factors are met and grants provisional certification of the class.

### E.  Appointment of Class Counsel

A court that certifies a class under Rule 23 must "appoint class counsel," Fed. R. Civ. P. 23(g)(1)(A), who "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).  "In appointing class counsel, courts consider: '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions ... and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]'" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Based on Plaintiffs' counsel's efforts on this case to date, the

Court is confident that they will fairly and adequately represent the Class Members' interests and appoints Plaintiffs' counsel as Class Counsel for the Settlement Class.

### F. Proposed Notice and Distribution

Having preliminarily approved the Agreement, the Court "must direct notice in a reasonable manner to all [Class Members] who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). For Rule 23(b)(3) classes, the Court must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort …. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance." *Mayhew v. Kas Direct, LLC*, 16 CV 6981 (VB), 2018 WL 3122059, at *9 (S.D.N.Y. June 26, 2018) (internal quotations omitted).

Here, "the Notices describe the settlement terms, inform the class about allocation of attorneys' fees and service awards, instruct each Class Member how to timely opt-out or object to the settlement, and provide specific information regarding the date, time, and place of the final approval hearing." (Docket No. 127 at 32). This is sufficient to satisfy the notice requirement. *See Dorn*, 2011 WL 382200, at *4 ("The Proposed Notice is appropriate because it describes the terms of the settlements, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing."); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (asserting that

class notice "need only describe the terms of the settlement generally").

**G. Dismissal of Claims Against Other Defendants**

Plaintiffs also request that the Court dismiss Plaintiffs' claims against Defendants ProAmpac LLC a/k/a ProAmpac and Ampac Holdco Inc. a/k/a ProAmpac with prejudice, since they are not entities that employ workers at the Walden plant. (Docket No. 127 at 34). They further request that the Court amend the case caption to this effect. (*Id.*). Because these defendants are not parties to the Agreement, and Plaintiffs acknowledge that they do not employ workers at the Walden plant, the Court grants Plaintiffs' motion.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion is granted. Accordingly, it is hereby ordered that:

(1) The Court grants preliminary approval of the parties' settlement as set forth in the Agreement, and preliminarily finds the terms of the Agreement to be fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure. The Court also approves the proposed Notices and Claim Form, and directs that they be distributed to the Class Members.

(2) For settlement purposes only, the Court preliminarily certifies the Settlement Class described in the Agreement, comprised of all individuals who were employed by ProAmpac at any point as non-exempt, hourly converting department employees at its manufacturing facility located in Walden, New York from April 15, 2016 through July 31, 2024. The Settlement Class is comprised of the individuals identified in the document annexed to the Agreement. (Docket No. 128-1 at 44-80).

(3) The Court appoints Plaintiffs Noemy Jackson, Roberto Perez, and Raymundo Gallardo as

representatives for the Settlement Class and appoints Robert McCreanor (Law Office of Robert D. McCreanor, P.L.L.C.) and Patricia Kakalec (Kakalec Law PLLC) as counsel for the Settlement Class.

(4) The Court grants the parties' request to include all Class Members (excluding those who timely opt out) as Class Members subject to the terms of the Agreement.

(5) The Court orders that a Fairness Hearing is scheduled for November 14, 2025 at 10:00 a.m. before the Honorable Judith C. McCarthy in Courtroom 421 at 300 Quarropas Street, White Plains, New York, 10601.  At the Fairness Hearing, the Court will consider whether the Agreement should be finally approved as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure and rule on the motion for attorney's fees, costs, and additional payments to be submitted by Plaintiffs.

(6) The Court dismisses Plaintiffs' claims against Defendants ProAmpac LLC a/k/a ProAmpac and Ampac Holdco Inc. a/k/a ProAmpac with prejudice.  The Clerk of Court is respectfully directed to amend the case caption to list Ampac Paper, LLC as the sole defendant.

Plaintiffs submitted a Proposed Order for Preliminary Approval of Class Action Settlement and Related Relief, (Docket No. 128-2), which the Court will approve in a separate order to be filed following this Opinion & Order.  The Clerk of Court is respectfully directed to terminate the pending Motion (Docket No. 126).

Dated:  August 13, 2025
        White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge